Titus E. Eisner *vs.* Fred B. Horton & another.

Suffolk.    December 7, 1908. — January 6, 1909.

Present: Knowlton, C. J., Morton, Hammond, Sheldon, & Rugg, JJ.

*Negligence,* Employer's liability.

At the trial of an action against a contractor to recover for personal injuries, received by the plaintiff while employed by the defendant in the erection of a building of many stories of steel construction with granite walls, alleged in one count of the declaration under R. L. c. 106, § 71, cl. 2, to have been caused by the negligence of a superintendent of the defendant, and alleged in another count to have been caused by the negligence of the defendant in failing to furnish the plaintiff with a suitable place in which to work, it appeared that the tenth floor of the building had been laid in terra cotta, and that many planks had been placed thereon, resting on the iron beams and the terra cotta, chiefly for the protection of the floor but also for the support of stones being used in the construction of the walls of the next story of the building and for a convenient way for workmen to walk upon. A runway of planks was so constructed along the side of the wall, upon which the masons stood as they worked and along which the plaintiff and others passed in carrying stones to be placed upon the wall. All the planks were placed in position by the workmen as they were needed and were not fastened down. There were holes left in the terra cotta flooring between the beams for wires or pipes to be placed in. There was uncontradicted testimony by the plaintiff and others that this method of laying planks and leaving holes in the terra cotta was usual and proper. While carrying a stone along the runway with another workman whom he was following, the plaintiff stepped upon the end of a plank which did not rest upon a beam but was over a hole in the terra cotta, the end went down and the plaintiff fell and was injured. It did not appear how the end of the plank happened to be so placed, but the condition of the plank before the accident was obvious. The plaintiff had been accustomed to work upon buildings of this kind for six years. *Held,* that as a matter of law the plaintiff had assumed the risk of the injury ; *also,* that there was no evidence of negligence of the defendant ; and, *also,* that there was no evidence of negligence of the superintendent, since to require a constant inspection of the planks where they were placed over the holes would be imposing upon the builder an unreasonable responsibility.

Tort for personal injuries received by the plaintiff while employed by the defendants in the construction of a building, alleged in the first count of the declaration under R. L. c. 106, § 71, cl. 2, to have been due to the negligence of a superintendent, and alleged in the second count to have been due to negligence of the defendants in failing to furnish to the plaintiff a safe and suitable place in which to work. Writ in the Superior Court for the county of Suffolk dated December 19, 1906.

The case was tried before *Wait*, J., who at the close of the plaintiff's evidence directed a verdict for the defendants. The plaintiff alleged exceptions. The facts are stated in the opinion.

*G. P. Beckford*, for the plaintiff.

*W. H. Hitchcock*, (*C. M. Pratt* with him,) for the defendants.

KNOWLTON, C. J. The plaintiff was working in the erection of a building of steel construction, with granite walls. The tenth floor had been laid in terra cotta, and it had upon it a large number of planks, resting upon the iron floor-beams and the terra cotta. They were put there chiefly for the protection of the floor from stones and other material, which they supported in large quantities, and which had been brought there for use in the construction of the next story of the building. From the approach by the elevator, in the centre of the building, there was a line of planks laid side by side to a point near the front of the building, which furnished a convenient way for the passage of men and the transportation of material, and adjacent to the front wall there was a similar line of planks on which the masons stood in laying the wall, and other men passed in moving stone and bricks and mortar to be used in the construction of the wall. The plaintiff testified that this runway was four planks in width, measuring out from the wall, while one of his witnesses said it was two or three planks wide. There were places in the terra cotta floor between the iron floor beams where openings had been left for pipes or wires to pass. The planks were put in place by the workmen as they were needed, and were laid upon the floor, without being fastened. There was uncontradicted testimony from the plaintiff and others, that this mode of using planks and of leaving openings in the terra cotta was a usual and proper mode of construction. There was no contention that the defendants failed to furnish a sufficient supply of suitable planks. As the plaintiff and one Garity were walking along the line of planks by the front wall, carrying a stone about three feet long, eighteen inches high, and from four to eight inches thick, Garity going in front, and holding one end of the stone up against his back, and the plaintiff going behind, holding the stone in front of him, one end of a plank on which the plaintiff stepped went down and his leg went through the floor, the stone fell, and the plaintiff fell and

broke one of his fingers.   The evidence tended to show that the end of the plank was left, or had slipped, so that it was not supported as it should have been by the terra cotta floor, and the weight upon it caused it to go down.   The plaintiff's principal contention is that there was negligence of the superintendent in failing to discover this condition of the plank and to make it safe.

The planks were not there as a structure.   They were for use by the workmen as needed for their convenience and the protection of the floor.   This was a kind of use that might properly be intrusted to ordinary workmen.   There were no serious dangers involved in the use of them by reason of an occasional small hole in the terra cotta floor.   If workmen were reasonably careful in putting them down and in observing their condition afterwards, there was no such danger of an injury as called for systematic inspection.   There was nothing to show whether this plank had been out of position for any considerable time before the accident.   It seems probable that it had been slid a little at some time by an accident, or by the negligence of some workman.   The plaintiff had been accustomed to work upon buildings of this kind for six or eight years, and he, or any other workman of experience, could see whether a plank over an opening was out of position, and could judge of the risk of such an accident as well as the superintendent could.   To hold that it was the duty of a superintendent, under such circumstances, to go about the building in every place where a plank was over an opening and observe its position, with such frequency as to prevent the possibility of such an accident, would impose upon the builder an unreasonable responsibility.

We are of opinion that the risk from the use of planks in this way was one of the risks of the business which the plaintiff assumed when he entered the defendant's service; and that there was no evidence of negligence on the part of the defendants or their superintendent.

*Exceptions overruled.*